UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN T. BERGER,

                Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

                Defendant.

CASE NO. 12-cv-5435-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos.

13, 15, 16).

      After considering and reviewing the record, the Court finds that the ALJ failed to

provide specific and legitimate reasons for his failure to credit fully opinions from

examining doctors. The ALJ instead credited opinions from non-examining, medical consultants who had never examined plaintiff, without providing a detailed explanation of the facts and evidence and of his interpretation thereof.

Plaintiff's alleged severe mental impairments include attention deficit hyperactivity disorder ("ADHD"), bipolar disorder and personality disorder. The opinions from plaintiff's examining doctors indicate severe and marked limitations on plaintiff's ability to function in a work setting as a result of these mental impairments. Because the ALJ failed to explain adequately why plaintiff's alleged limitations from his mental impairments, as opined by plaintiff's examining doctors, were rejected, this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

<u>BACKGROUND</u>

Plaintiff, JOHN T. BERGER, was born in 1965 and was forty-one years old on his alleged date of disability onset of April 1, 2007 (*see* Tr. 26, 157, 236). Plaintiff received his GED and has almost two years of university education (*see* Tr. 45). He reported that mental health symptoms caused him to stop his university studies (*see* Tr. 913). Plaintiff has nineteen years of experience as a painter, as well as past relevant work experience working for Tacoma Goodwill Industries (*see* Tr. 46-47, 245).  Plaintiff testified that one of his recent jobs for a painting company did not work out because his employer "needed somebody that could work completely full time and I had counseling going on and too many appointments to keep  . . . . " (*see* Tr. 47).

Regarding his job at Goodwill, plaintiff agreed that he was "an achiever," doing "almost everything there was to do with running the store except management" (*see* Tr. 48). However, the Court notes that Dr. Felicia Mueller, Psy.D. indicated her assessment that plaintiff's "manic episodes appear to involve grandiose presentation" (*see* Tr. 908). When asked by the ALJ about what happened to his "achiever" status, when he was doing almost everything to run the store, plaintiff testified that his ability to do these things started "fading out and I couldn't keep up what I'd previously been doing" (*see* Tr. 48). Plaintiff testified that he took a few sick days and the last sick day that he took "got not reported and that was it" and he was fired (*id.*).

Plaintiff has at least the severe impairments of lumbar degenerative disk disease, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, personality disorder, and substance abuse (*see* Tr. 26). Plaintiff indicated that these impairments affected his energy, his ability to think, and his pain level, and ultimately he "couldn't get [him]self out of bed on a regular basis" (Tr. 48). At the time of his administrative hearing, plaintiff testified that he lived with his parents and gets DSHS income from the state (Tr. 51).

Plaintiff appears to have attempted suicide in December, 2007 (*see* Tr. 29). Although the ALJ acknowledged this episode of decompensation, the ALJ found that plaintiff "quickly recompensated during his brief hospital stay" (*see* Tr. 29). However, the ALJ also noted that in January, 2008, "just a few days after being discharged from the hospital, he reported mood fluctuations and ongoing suicidal ideation" (*id.*). Although the ALJ found that these symptoms likely were "residual from his suicide attempt," the ALJ

1   also found that these symptoms may have been associated partially "with substance abuse

2   because the claimant reported that he was drinking a six-pack of beer daily" (*id.*).

3   <u>PROCEDURAL HISTORY</u>

4   On September 23, 2008, plaintiff protectively filed an application for a period of

5   disability and disability benefits ("DIB") pursuant to Title II and an application for

6   supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act

7   (*see* Tr. 157-68, 231). His applications were denied initially and following

8   reconsideration (*see* Tr. 95-98, 100-05). Plaintiff's requested hearing was held before

9   Administrative Law Judge M.J. Adams ("the ALJ") on November 2, 2010 (*see* Tr. 40-

10   73). On January 6, 2011, the ALJ issued a written decision in which he concluded that

11   plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 21-39).

12   On April 2, 2012, the Appeals Council denied plaintiff's request for review,

13   making the written decision by the ALJ the final agency decision subject to judicial

14   review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

15   seeking judicial review of the ALJ's written decision in May, 2012 (*see* ECF No. 4).

16   Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 30,

17   2012 (*see* ECF Nos. 10, 11). In his Opening Brief, plaintiff contends that the ALJ erred in

18   his assessment of:   (1) the medical evidence; (2) lay evidence; (3) plaintiff's credibility

19   and testimony; (4) plaintiff's residual functional capacity ("RFC"); and (5) whether or not

20   plaintiff was capable of performing his past relevant work (*see* ECF No. 13, p. 2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra,* 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra,* 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

1   when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

2   LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v.*

3   *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

4                              <u>DISCUSSION</u>

5        1.   **The ALJ erred in his assessment of the medical evidence**.

6        Here, the ALJ rejected some opinions from plaintiff's examining doctors and gave

7   the opinions of his examining doctors only "some weight" (*see* Tr. 31). The ALJ

8   provided a short description of the opinions from two of plaintiff's examining doctors,

9   Dr. Harvey Montgomery, M.A., LMHC, CMHS, and Dr. Felicia Mueller, Psy.D., that

10  was lacking in detail and omitted much from the doctors' reports (*id.*). The ALJ rejected

11  both doctors' opinions regarding "such a severe level of functional limitations," with the

12  finding that they were not reflected in the "overall record" (*see id.*). Instead, the ALJ gave

13  "significant weight" to the opinions of state agency, non-examining, medical consultants

14  because the consultants had reviewed plaintiff's records, were familiar with the Social

15  Security regulations, and because their opinions generally were "consistent with objective

16  medical evidence" (*id.*).

17       The ALJ must provide "clear and convincing" reasons for rejecting the

18  uncontradicted opinion of either a treating or examining physician or psychologist.

19  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

20  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

21  a treating or examining physician's opinion is contradicted, that opinion "can only be

22  rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

Here, based on a review of the relevant record, as described more fully below, the Court concludes that the ALJ failed to give a "detailed and thorough summary of the facts and conflicting clinical evidence" *see Reddick, supra*, 157 F.3d at 725 (*citing Magallanes, supra*, 881 F.2d at 751), and failed to provide specific and legitimate reasons supported by substantial evidence in the record for his failure to credit fully opinions

from plaintiff's examining doctors.  *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043; *Van Nguyen, supra*, 100 F.3d at 1466.

Dr. Mueller examined plaintiff on March 19, 2010 (*see* Tr. 905-17). She conducted a clinical interview and numerous tests and diagnostic procedures, including a mental status examination ("MSE"), Beck Depression Inventory-Second Edition (BDI-II), Hamilton Anxiety Rating Scale (HAM-A), and Trail making A & B tests (*see* Tr. 911). Dr. Mueller indicated some of her objective observations, such as plaintiff's tangential speech, noting that he had "difficulty staying on task, especially in response to verbal cues" (*see* Tr. 906). She specifically assessed that his markedly severe tangential speech was "likely to interfere with social interactions" (*see* Tr. 906, 908). Dr. Mueller also observed that plaintiff exhibited "poor concentration and attention," and opined that this moderately severe symptom would affect plaintiff in that he would have "difficulty remaining task focused on the job" (*see* Tr. 906).

Dr. Mueller observed that plaintiff exhibited a highly variable mood, and opined that his variable mood and his "presentation likely compromises level of appropriateness of interactions" (*see* Tr. 908). Dr. Mueller opined that plaintiff suffered from moderate limitations in his abilities to relate appropriately to co-workers and supervisors, and to interact appropriately in public contacts (*id.*). She also opined that he was markedly limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (*id.*).

Plaintiff completed the B part of the Trail making test in 153 seconds with two mistakes (*see* Tr. 916). Dr. Mueller observed that plaintiff's performance was "below the

normative range for [plaintiff's] age," and she assessed that his performance suggested a

"difficulty engaging coordination, visuomotor tracking, speed of information processing,

and attending to more than one stimulus at a time" (*see* Tr. 916). Dr. Mueller assessed

that plaintiff's global assessment of functioning ("GAF") was 39.

The ALJ failed to discuss any of Dr. Mueller's specific objective observations,

testing results or opinions regarding plaintiff's ability to function in a work environment.

An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v.

Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393,

1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).

The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*,

*supra*, 49 F.3d at 571.

Similarly, the ALJ failed to discuss the examinations and evaluations of Dr.

Montgomery (*see* Tr. 598-602, 898-903). On February 4, 2009, Dr. Montgomery

observed that plaintiff was unkempt; exhibited poor hygiene; exhibited depressed and

anxious mood, as well as rapid, loud and pressured speech; and was guarded, distractible,

agitated; hyperactive; and interrupting (*see* Tr. 602). He assessed that plaintiff was

severely limited in his ability to perform routine tasks, and severely limited in his ability

to respond appropriately to and tolerate the pressures and expectations of a normal work

setting (*see* Tr. 600). Dr. Montgomery assessed that plaintiff was markedly limited in his

abilities to learn new tasks, interact appropriately in public contacts, care for self,

including personal hygiene and appearance, and to control physical or motor movements

and maintain appropriate behavior (*see id.*).

1    Likewise, on September 10, 2009, Dr. Montgomery indicated that he personally

2    observed plaintiff's symptoms of depressed mood, anxiety, social withdrawal,

3    psychomotor agitation and retardation, and evidence of a thought disorder (*see* Tr. 899).

4    He assessed that plaintiff's depressed mood was severe, and that it would affect

5    plaintiff's work activities in that it would lead to "absenteeism, tardiness, [and a] lack of

6    energy for completion of tasks" (*see id.*). Dr. Montgomery listed a number of other work

7    activities that would be affected by plaintiff's other moderately and markedly severe

8    symptoms (*see id.*). Dr. Montgomery also indicated his opinion regarding many

9    functional limitations that affected plaintiff's ability to work, such as severe limitation in

10   his ability to respond appropriately to and tolerate the pressures and expectation of a

11   normal work setting (*see* Tr. 901). Regarding this last factor, Dr. Montgomery

12   specifically indicated his opinion that plaintiff easily could be "overwhelmed with a little

13   stress" (*see id.*).

14

15       The ALJ erred by failing to discuss the significant, probative evidence from the

16   examinations of Drs. Mueller and Montgomery. *See Flores, supra*, 49 F.3d at 571.  In

17   addition, the ALJ erred by failing to credit fully opinions from these examining doctors,

18   yet also failing to provide a "detailed and thorough summary of the facts and conflicting

19   clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*,

20   157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

21       When discussing the opinions of Drs. Mueller and Montgomery, the ALJ

22   specifically indicated that they both "concluded that the claimant had moderate to severe

23   limitations in cognitive and social functioning; much of the impairments was associated

24

ORDER ON PLAINTIFF'S COMPLAINT - 11

1    with polysubstance abuse" (*see* Tr. 31 (citation omitted)). However, the treatment records

2    from Drs. Mueller and Montgomery directly contradict the indication from the ALJ that

3    they both opined that much of plaintiff's impairment was associated with polysubstance

4    abuse. On September 10, 2009, Dr. Montgomery indicated that plaintiff did not have any

5    mental health symptoms that were affected by substance abuse or dependence, and

6    further opined that alcohol or drug treatment was not likely to improve plaintiff's ability

7    to function in a work setting (*see* Tr. 900). Similarly, while Dr. Mueller on March 19,

8    2010 opined that plaintiff's mental health symptoms were affected by substance abuse or

9    dependence, like Dr. Montgomery, Dr. Mueller opined that alcohol or drug treatment

10   would not be likely to improve plaintiff's ability to function in a work setting (*see* Tr.

11   907). Therefore, the Court concludes that the ALJ's characterization in his sparse

12   discussion of the opinions of Drs. Mueller and Montgomery that "much of the

13   impairment was associated with polysubstance abuse," is not based on substantial

14   evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750 ("Substantial

15   evidence" is more than a scintilla, less than a preponderance, and is such "'relevant

16   evidence as a reasonable mind might accept as adequate to support a conclusion'")

17   (*quoting Davis*, *supra*, 868 F.2d at 325-26).

18           The only other statement that can be inferred to be an explanation of the ALJ's

19   rejection of the opinions of Drs. Mueller and Montgomery is the statement that "the

20   overall record does not reflect such a severe level of functional limitations" (*see* Tr. 31).

21   However, an ALJ may not reject opinions from examining doctors simply by coming to a

22   different conclusion than the doctors come to. Instead, an ALJ must explain why his own

interpretations, rather than those of the doctors, are correct. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ failed to explain why his interpretation of the evidence was more correct than the opinions of plaintiff's examining doctors.

The Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993).  The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The Court also notes that in a case in which the Ninth Circuit found that an ALJ had failed to provide specific and legitimate reasons supported by substantial evidence in

the record for the failure to credit fully the opinion of a treating physician, the written

decision by that ALJ had included the following discussion:

> The opinions of total disability tended [sic] in the record are unsupported
> by sufficient objective findings and contrary to the preponderant
> conclusions mandated by those objective findings. The duration of the
> claimant's stress treadmill testings and relative lack of positive findings,
> the results of other laboratory and x-ray testing, the objective
> observations of the physicians of record, all preponderate toward a
> finding that the claimant has never lost the residual functional capacity
> for light work for any period approaching 12 months.

*Embrey v. Bowen*, 849 F.2d 418, 421 (9th 1988). The Ninth Circuit Court found that

these statements by the *Embrey* ALJ were not sufficient to discount the doctors' opinions,

even though the ALJ in *Embrey* had reviewed the medical evidence *Id.* (citations

omitted). The court explained:

> To say that medical opinions are not supported by sufficient objective
> findings or are contrary to the preponderant conclusions mandated by the
> objective findings does not achieve the level of specificity our prior
> cases have required, even when the objective factors are listed seriatim.
> The ALJ must do more than offer his conclusions. He must set forth his
> own interpretations and explain why they, rather than the doctors', are
> correct. Moreover[,] the ALJ's analysis does not give proper weight to
> the subjective elements of the doctors' diagnoses. The subjective
> judgments of treating physicians are important, and properly play a part
> in their medical evaluations.

*Id.* at 421-22 (internal footnote omitted).

Although Drs. Mueller and Montgomery were examining doctors, unlike the

treating doctor whose opinion was evaluated by the ALJ in *Embrey*, here, the ALJ's

rejection of the examining doctors' opinions similarly was insufficient. *See id.*

1
2

    2. **Plaintiff's credibility and testimony should be evaluated anew following remand of this matter**.

3
4
5
6
7
8
9
10

    A determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). In addition, this Court already has determined that the ALJ failed to evaluate the medical evidence in this case properly, *see supra*, section 1. Therefore, plaintiff's testimony and credibility must be evaluated anew following remand of this matter. The Court also notes, however, that the ALJ appears to have relied improperly on plaintiff's activities of daily living when discussing his rejection of plaintiff's allegations (*see* Tr. 31).

11
12
13
14
15
16
17
18
19
20
21
22
23

    Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities  . . . .  does not in any way detract from h[is] credibility as to h[is] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

24

ORDER ON PLAINTIFF'S COMPLAINT - 15

1    Here, the ALJ included the following discussion regarding plaintiff's activities of

2  daily living:

3        The claimant's reported activities of daily living are consistent with the
         residual functional capacity above. The claimant indicated that he could
4        take the bus, ride a bicycle, take care of his dog, exercise, and perform
         some household chores. He lives with his parents and gets along well
5        with them. He traveled to Portland, OR and Montana with his family
         (internal citations to Ex. 6F/18; 7F/4; 12F/44; 15F/26; 53, 155; 22F/10;
6        23F/8).

7  (Tr. 31).

8    Here, the ALJ did not make any specific finding that plaintiff's activities of daily

9  living were transferable to a work setting, and did not specify any other testimony of

10 plaintiff that was contradicted by his activities of daily living (*see id.*). Therefore, any

11 reliance by the ALJ on plaintiff's activities of daily living in order to support his rejection

12 of plaintiff's allegations was not proper. *See Orn, supra*, 495 F.3d at 639 (*citing Fair,*

13 *supra*, 885 F.2d at 603).

14

15   Similarly, as the assessment of plaintiff's residual functional capacity ("RFC")

16 largely depends on the medical evidence, plaintiff's RFC must be evaluated anew

17 following remand of this matter, as must the remainder of the sequential disability

18 evaluation process.

19   3.   **This matter should be reversed and remanded for further proceedings,**

20        **not for a direction to award benefits**.

21   Generally when the Social Security Administration does not determine a

22 claimant's application properly, "'the proper course, except in rare circumstances, is

23 to remand to the agency for additional investigation or explanation.'" *Benecke v.*

24

ORDER ON PLAINTIFF'S COMPLAINT - 16

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

Circuit has put forth a "test for determining when [improperly rejected] evidence

should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting
> such evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from
> the record that the ALJ would be required to find the claimant disabled
> were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

Furthermore, the decision whether to remand a case for additional evidence or simply to

award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.

1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and

questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing

Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

1    Therefore, remand is appropriate in order to allow the Commissioner the

2  opportunity to consider properly all of the medical evidence as a whole and to incorporate

3  the properly considered medical evidence into the consideration of plaintiff's credibility

4  and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.  Remanding the

5  matter will allow the Commissioner the opportunity not only to reconsider its evaluation

6  of the medical evidence that was presented to the ALJ, but also to consider fully the new

7  evidence plaintiff submitted for the first time to the Appeals Council (*see* Tr. 5, 287-292,

8  964-1007).

9                              <u>CONCLUSION</u>

10    Based on the stated reasons and the relevant record, the Court **ORDERS** that this

11  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

12  405(g) to the Commissioner for further consideration.

13    **JUDGMENT** should be for plaintiff and the case should be closed.

14    Dated this 11th day of February, 2013.

15

16

17

18    _____

19    J. Richard Creatura
     United States Magistrate Judge

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 18